UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:24-cr-502-JLB-LSG

JUAN PABLO MEDINA-MEDINA
a/k/a "Joel Rubio Perez"

### UNITED STATES' SENTENCING MEMORANDUM

The United States recommends this Court sentence the defendant to a term of imprisonment within his Guidelines range. In support thereof, the United States provides the following:

### Factual Background

On November 6, 2024, in the Caribbean Ocean and in international waters approximately 190 nautical miles west of Juancho, Dominican Republic, a maritime patrol aircraft observed a go-fast vessel with a tarp and fuel barrels on deck. The United States Coast Guard Cutter Vigilant diverted its course to intercept the suspect vessel, launching two small boats to investigate. While the small boats were en-route to the vessel, the mariners began to jettison packages overboard. The law enforcement boarding team arrived on scene and gained positive control of the subject vessel. The boarding team recovered 21 bales of marihuana with a weight of 667 kilograms.

**Presentence Investigation Report**

The final amended presentence investigative report (PSR) for the defendant was filed on November 25, 2025. The United States noted no objections to the facts or calculations in the PSR.

The U.S. Probation Officer calculated a base offense level of 26 based on the weight of the narcotics. The defendant is safety valve eligible (USSG § 5C1.2) and is a zero-point offender (USSG § 4C1.1), resulting in 4 levels of reduction. After applying a three-level acceptance of responsibility adjustment (-2, -1) under USSG §3E1.1(a) and (b), the defendant's total offense level is 19. His criminal history was established to be Category I. Based on a total offense level of 19 and a criminal history category of I, the Guidelines imprisonment range is 30-37 months.

**Minor or Mitigating Role**

A defendant is not entitled to a minor rule reduction unless the defendant shows that he was a minimal or minor participant in the offense. *See* USSG §3B1.2. The defendant bears the burden of establishing his entitlement to such adjustment by a preponderance of the evidence. *United States v. De Varon,* 175 F.3d 930, 939 (11th Cir. 1999).

The extent and nature of the defendant's role in the relevant conduct is the "foremost" factor in determining whether the defendant performed a minor role. *De Varon*, 175 F.3d at 940. Where, as here, the defendant cannot "establish that [he] played a relatively minor-role" in the crime of conviction, and not a relatively

"minor role in any larger criminal conspiracy," the defendant should be denied a minor-role reduction. *Id.* at 944.

Before recent amendments to the Sentencing Guidelines, *De Varon* also permitted a court to "measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." 175 F.3d at 934. This prong involved a defendant "show[ing] that he was substantially less culpable than the other participants in the conspiracy." *United States v. Reyes*, 279 F. App'x 802, 805 (11th Cir. 2008).

But the Sentencing Guidelines, as of November 1, 2025, state that a mitigating role adjustment shall apply in drug trafficking cases "regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity." § 2D1.1(e)(2)(B). In essence, this instruction eliminates the second prong of *De Varon* in drug trafficking cases. *See United States v. Brown,* 332 F.3d 1341, 1345 n.6 (11th Cir. 2003) (recognizing that an amendment to the Sentencing Guidelines only abrogated Eleventh Circuit precedent "to the extent that" it affected the holding's definition of "underlying offense"); *United States v. Duncan,* 400 F.3d 1297, 1305 (11th Cir. 2005) (explaining that the unaffected holdings of a partially abrogated decision remain binding under the prior-panel-precedent rule). Equally important, then, is that the Sentencing Guidelines left the first-prong analysis in *De Varon* untouched. *De Varon*'s first (and mandatory) factor thus continues to provide the framework for the Court's analysis.

The Sentencing Guidelines provide a non-exhaustive list of factors for courts to analyze under that framework:

> (i)    the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)    the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and
>
> (v)    the degree to which the defendant stood to benefit from the criminal activity.

§3B1.2 cmt. 3(c).

The revised Guidelines offer a few examples for when a court could reduce a sentence under § 3B1.2(a) in a drug trafficking case. They state that such a reduction is "generally warranted" when the defendant's responsibility primarily resulted from either performing a task "plainly among the lowest level of drug trafficking functions" or "performing another low-level trafficking function, such as distributing controlled substances in user-level quantities for little or no monetary compensation." § 2D1.1(e)(2)(B).

Those factors and examples demonstrate that this defendant is not eligible for a minor role reduction here because he did not perform a low-level drug trafficking

function. *First*, the defendant understood the scope and structure of the criminal activity. *See* §3B1.2 cmt. 3(c)(i). He knew the task at hand was to navigate a trafficking amount of narcotics across the high seas, so that it could be smuggled into foreign countries. The defendant was one of two people on a go-fast vessel laden with nearly 700 kilograms of drugs. That vessel embarked on a transnational voyage on the open ocean, traveling likely hundreds of miles over a period of days.

*Second*, the defendant was entrusted to help navigate that drug-laden vessel with minimal supervision. *See* §3B1.2 cmt. 3(c)(ii)-(iv) (providing that the "nature and extent" of the defendant's responsibilities are factors in analyzing whether he played a minor role); *De Varon*, 175 F.3d at 944. On a small vessel, each mariner takes significant responsibility in continuing to operate the vessel, even if the mariner is not the captain; in short, there are no bystanders on a smuggling vessel just along for the ride. For example, in *Mendez*, the Eleventh Circuit affirmed that a defendant was not entitled to a minor role reduction where the defendant "merely drove the boat" containing drugs, whereas his codefendants were, respectively, the captain and owners of the drugs. *United States v. Mendez*, No. 22-11601, 2025 WL 2732015, at *5 (11th Cir. Sept. 25, 2025). *See United States v. Monzo*, 852 F.3d 1343, 1347 (11th Cir. 2017) (considering, as part of the totality of the circumstances, that the defendant "participated in the distribution of high-purity [drugs], ... that he was responsible only for his direct role in the conspiracy, and that he was important to the scheme"). Like the defendant in *Mendez*, the defendant's participation in driving a drug-

smuggling boat across the sea suffices to show that he performed more than a minor role.

Furthermore, the defendant did not have a minor role because his actual conduct was coextensive with the relevant conduct. *See United States v. Alvarado-Forbes*, 247 F. App'x 203, 204 (11th Cir. 2007) (stating "the substantial amount of cocaine on the vessel was a material consideration" for denying minimal participant or minor role); *see also United States v. Cruickshank,* 837 F.3d 1182, 1195 (11th Cir. 2016) (reaffirming that the amount of drugs transported is a significant consideration in minor role analysis, but explaining that it may not be the *only* factor the court considers); *United States v. Alarcon,* 194 F. App'x 727, 731 (11th Cir. 2006) (holding that defendant who "conspir[ed] to import two kilograms of heroin" and "admitted [that] he had personally transported that amount into the country" was not eligible for a minor role). It defies precedent and logic that a defendant entrusted with narcotics having a wholesale value of millions of dollars and transporting the same across a broad expanse of ocean to another continent is held to the functional equivalent of a person transporting smaller amounts of narcotics at a fraction of the distance.

The new Guidelines keep intact the rule that a defendant cannot redefine the scope of "the criminal activity" by invoking the vast, multinational drug-trafficking enterprise that inevitably surrounds the maritime transportation of narcotics. *Compare* § 2D1.1(e)(2)(B), *with De Varon*, 175 F.3d at 944. The minor-role inquiry remains anchored in the defendant's relevant conduct, not the abstract hierarchy of a

6

transnational cartel. *De Varon*, 175 F.3d at 944 (warning that a defendant "may not establish that he played a relatively minor role by pointing to a broader conspiracy in which he was a small player"). That principle remains unassailable in the Eleventh Circuit's maritime drug-trafficking cases. *See, e.g., Cabezas-Montano*, 949 F.3d at 607 (holding that crewmembers who moved a large quantity of high-purity cocaine through internationals waters played a serious and important role inconsistent with minor-role relief); *United States v. Gruezo*, 66 F.4th 1284, 1294 (11th Cir. 2023) (holding that the defendant's involvement as a crewmember of a vessel smuggling a large quantity of drugs was serious and important enough to warrant the denial of a minor role reduction under § 3B1.2); *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015) ("only those participants who were involved in the relevant conduct attributed to the defendant may be considered."). Nothing in the revised Guidelines changes this foundational principle: a defendant's culpability is measured by the conduct for which he is held accountable, not by speculative reference to uncharged traffickers, financers, or producers.[1]

Accordingly, a defendant cannot satisfy his burden under *De Varon* merely by reciting the scale of the international narcotics trade and labeling himself a "low-level courier." Such a talismanic invocation does not establish a mitigating role by a

---

[1] This case tracks *United States v. Herrera-Villarreal*, No. 15-14923, 2016 WL 6123493, at *1 (11th Cir. Oct. 20, 2016). There, an MDLEA defendant was sentenced "based on the offense conduct of transporting 1,227 kilograms of cocaine as a crewmember aboard a vessel." *Id.* at *2. The Eleventh Circuit explained that "[b]ecause [the defendant's] offense level was calculated using only the amount of drugs found on the boat on which he served, he did not have a minor role compared to his relevant conduct." *Id.* Among other things, the Eleventh Circuit emphasized that the defendant's "actual conduct was identical to the relevant conduct attributable to him." *Id.*

preponderance of the evidence. *See De Varon*, 175 F.3dat 939. If a defendant were permitted to expand the "criminal activity" to encompass the entire production-to-distribution chain, the analysis would necessarily include the full scope, quantity, and value of that enterprise. These are precisely the considerations that render his contribution material, not minor. In other words, the argument is a double-edged sword: if the defense invites the Court to consider the whole scheme, it must accept the corresponding breadth of culpability stemming from the higher quantity of the drugs involved.

In any event, the defendant's conduct here does not involve a "low level trafficking function." The Guidelines offers the example of a person who distributes controlled substances in user-level quantities for little or no monetary compensation or with a primary motivation other than profit, like supporting his own addiction. § 2D1.1(e)(2)(B). This example aligns with the standard factors considered in *De Varon's* minor role analysis. A defendant who distributes controlled substances in user-level quantities typically holds smaller amounts of controlled substances—not the "hundreds of kilograms of narcotics" held by the defendant. *United States v. Medina*, 656 F. App'x 975, 981 (11th Cir. 2016). The fair market value of user-level quantities pales in comparison to the millions of dollars of marijuana that the defendant possessed.

*Third*, the defendant stood to substantially benefit from this drug-trafficking venture. *See* §3B1.2 cmt. 3(c)(v). In contrast to the Guidelines' example, the

defendant transported a trafficking – not a personal use amount – of marijuana to make a significant amount of money. *Cf.* § 2D1.1(e)(2)(B).

Receipt of little or no monetary compensation contrasts with the defendant here, who would likely receive a substantial amount of money in exchange for his services. The defendant may rebut that his compensation for this smuggling venture pales in comparison to what high-level members of the conspiracy would reap from the venture. Not so. Much like *De Varon* cautions against nebulous references to a broader conspiracy, so too should the Court decline to apply that analysis here, as it would tend to over-estimate the earnings of a figurative kingpin while disregarding a bevy of other factors with likely relevance here, for example:

- The number of investors in the narcotics load, as such substantial ventures often involve more than one;

- The costs of purchasing the narcotics;

- The costs associated with paying workers responsible for transporting the narcotics throughout South America, holding it in temporary storage locations, and transporting it to the dispatch site;

- The costs associated with paying for a vessel or the fabrication of a vessel, the purchase of multiple outboard engines, gasoline, and electronic equipment such as satellite phones and GPS devices; and

- The costs associated with paying the transportation organization responsible for planning the route, recruiting mariners for substantial fees, and dispatching the load.

Analysis of the potential gross profits of a successful venture is not persuasive to the minor role analysis, and the amount each mariner would be expected to make from a successful trip militates against a minor role reduction for these mariners. Indeed, aside from the leaders, organizers, managers, and supervisors, the mariners are in the upper band of financial compensation based on the complexity of the tasks assigned to them and the risks undertaken.

The defendant's role in the distribution here also contrasts from the Guidelines' example. While a distributor in user-level quantities plays a small role— getting product to end users—the defendants on this boat played an important role by facilitating the transport of nearly 700 kilograms of narcotics across the ocean for redistribution. Whereas the Guidelines now offer minor role relief in circumstances where someone delivered a user-level quantity of narcotics, it does not extend to circumstances where a defendant delivers the equivalent of *millions* of user-quantity doses of illicit drugs.

Nor was the defendant a mere courier. The defendant and his coconspirators trafficked a large quantity of narcotics across the high seas. The defendant knew that he was involved in an illegal activity from the start and agreed to undertake the trip. *United States v. Gil-Ramirez*, 686 F. App'x 651, 654 (11th Cir. 2017) (no minor role for defendant who imported 2,414 grams of cocaine into the United States). The defendant played a "transportation role" that involved "moving a large quantity of [narcotics] through international waters." *United States v. Cabezas-Montano*, 949 F.3d 567, 607 (11th Cir. 2020). This conduct splits from the classic drug trafficking

courier, where an individual takes small amounts of drugs on their person or in a personal vehicle from one place to another or delivers the product to end users in a transaction lacking the complexity of a transoceanic voyage. The Guidelines focus on the lowest of the low, but this defendant was entrusted with millions of dollars' worth of narcotics. This role is "serious and important" to the scheme and thus is not eligible for a minor role reduction. *United States v. Gruezo*, 66 F.4th 1284, 1294 (11th Cir. 2023).

Therefore, consistent with *De Varon* and the structure of § 3B1.2 as amended, the Court's analysis should remain confined to the defendant's role within the relevant conduct, which is the transport of nearly 700 kilograms of narcotics across international waters. That discrete conduct defines the offense of conviction, and within that context, the defendant cannot plausibly be characterized as a "minor" participant. Attempts to broaden the criminal activity to the entire supply chain are inconsistent with Eleventh Circuit precedent, the structure of § 3B1.2, and the logic of the amendment itself. The defendant's role of navigating a massive narcotic shipment across the high seas was indispensable to the operation and therefore not "minor" in any meaningful sense.

### Sentencing Factors

Sentencing judges should apply the United States Sentencing Guidelines in arriving at an appropriate sentence, but application of the USSG is not mandatory. *United States v. Booker*, 543 U.S. 220 (2005). Accordingly, sentencing judges can exercise discretion in deviating from the USSG, if doing so would result in a

11

reasonable sentence, taking into consideration other factors that Congress has enumerated in 18 U.S.C. § 3553(a).

Section 3553(a) requires that the sentence reflect:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed—

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B)    to afford adequate deterrence to criminal conduct;
        (C)    to protect the public from further crimes of the defendant;
        (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established for the offense category in the guidelines;

(5)    any pertinent policy statement issued by the Sentencing Commission;

(6)    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

Regarding the reasonableness of a USSG sentence, "'when the district court imposes a sentence within the advisory Guidelines range,'" the Eleventh Circuit "'ordinarily will expect that choice to be a reasonable one.'" *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009) (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

To arrive at an appropriate sentence, the district court must consider all the

applicable Section 3553(a) factors. *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). That does not mean, however, that it must give all the Section 3553(a) factors equal weight. Instead, the sentencing court "is permitted to attach 'great weight' to one factor over others." *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 57 (2007)). The decision about how much weight to assign a particular sentencing factor is "committed to the sound discretion of the district court." *United States v. Williams*, 526 F.3d 1312, 1322 (11th Cir. 2008) (internal citation omitted).

The United States submits that a Guidelines sentence is appropriate considering the nature and circumstances of the offense, the history and characteristics of the defendant, and other factors set forth under 18 U.S.C. § 3553(a). A significant departure or variance below the guidelines is unwarranted and would result in a sentence insufficient to meet the statutory purposes of sentencing. The sentence should reflect the seriousness of this drug trafficking offense. Protection of the community is also a paramount consideration when crafting a sentence for the defendant. Further, and to avoid any unwarranted disparities in sentencing, the defendant should receive a similar sentence to that of his co-defendant, who was similarly sentenced to a term of imprisonment consistent with his Guidelines (30 months). *See* Doc. 67. The two defendants in this case are similarly situated and no reason exists for a disparate sentence.

## **CONCLUSION**

For the reasons set out in this memorandum, the United States requests this

Court sentence the defendant to a Guidelines sentence.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    */s/ David J. Pardo*
David J. Pardo
Assistant United States Attorney
Florida Bar No. 61284
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: David.Pardo@usdoj.gov

**U.S. v. Medina-Medina**                    **Case No. 8:24-cr-502-JLB-LSG**

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2025, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will send a notice

of electronic filing to the following:

Counsel of Record.

/s/ David J. Pardo
David J. Pardo
Assistant United States Attorney
Florida Bar No. 61284
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: David.Pardo@usdoj.gov